**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CESAR F. R.,<br><br>*Plaintiff,*<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant.* | Civil Action No. 21-10590<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Cesar F. R.'s ("Plaintiff") request for review of Administrative Law Judge Andrea Addison's ("Judge Addison" or the "ALJ") decision regarding Plaintiff's application for Disability Insurance Benefits ("DIB"), pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

**I.    STANDARD OF REVIEW AND APPLICABLE LAW**

    **A.  Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but his factual findings must be affirmed if they are supported by substantial evidence. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence is "less than a preponderance").

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd, 590 F. App'x 167 (3d Cir. 2014).

### B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §

416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503.

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See id.

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the analysis proceeds.

Prior to the fourth step, the Commissioner must determine the claimant's residual functional capacity ("RFC") to perform work activities despite the limitations from the claimant's impairments. 20 C.F.R. §§ 416.920(e), 416.945. In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 416.920(e). Then, at step four, the Commissioner must decide if the claimant has the RFC to perform his past relevant work. 20 C.F.R. §416.920(f). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R.

§ 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. General Background

Plaintiff applied for DIB in 2015, when he was 53 years old. Administrative Transcript ("Tr.") 264, 265, ECF No. 7. He alleged disability due to chronic back pain that radiates down his legs and into his shoulders and neck. Tr. 44, 50, 63. Plaintiff has a bachelor's degree in business administration with a concentration in accounting. Tr. 26. Plaintiff has past work experience in accounting. Tr. 36.

In a hearing held before the ALJ on December 6, 2017, Plaintiff reported living with his minor son whose mother passed away. Tr. 34, 35. Plaintiff also has two other children who do not live in his residence, one of which is still a minor and lives with his biological mother. Tr. 35, 36. Plaintiff has a driver's license and is able to drive his son the five or six blocks to school every day. Tr. 13, 36. In addition, Plaintiff cooks once or twice per week, does laundry occasionally, and shops for groceries.[1] Tr. 42, 43, 67, 68. He receives Medicare and currently supports his household on his savings. Tr. 40. Plaintiff also relies heavily on his cousin to help with his rental property,[2] as well as with chores like cleaning and cooking. Tr. 50, 51, 67.

Plaintiff further reported that he can walk only a block before he experiences pain in his lower back. Tr. 44. In addition, he can only stand for four to five minutes and after ten or fifteen

---

[1] The grocery store is only one corner away and Plaintiff only carries one or two bags at a time. Tr. 67, 68.

[2] Plaintiff owns a duplex and rents out the half he does not live in. This rental property is another source of income for Plaintiff.

minutes of sitting, he must get up to move around as the pain becomes too much to stay still.  Tr. 44, 45.

### B.  Procedural History

On June 13, 2015, Plaintiff filed an application for DIB, alleging disability beginning on January 15, 2014.  Tr. 36, 37.  The Social Security Administration denied this claim on March 21, 2018.  Tr. 110-16.  The Appeals Council remanded the case on October 29, 2019.  Tr. 123-24.  Judge Addison denied Plaintiff's claim on March 17, 2020, and concluded that Plaintiff was not disabled within the meaning of the Act.  Tr. 13-22.  The Appeals Council denied Plaintiff's request for review on March 5, 2021.  Tr. 1-3.  This Action followed.

### C.  ALJ Decision

The ALJ determined that Plaintiff was not disabled under the five-step framework.  At step one, the ALJ concluded that Plaintiff did not engage in substantial gainful activity from the start of his injury, January 15, 2014, through the date he was last insured, December 31, 2018.  Tr. 16.  At step two, the ALJ determined that Plaintiff's cervical and lumbar spine degenerative disc disease and hypertension qualified as severe impairments.  Id.  At step three, the ALJ found that none of Plaintiff's impairments, individually or collectively, met or medically equaled the criteria of a listed impairment.  Id.

> Before moving onto step four, the ALJ determined Plaintiff's RFC to be as follows:
>
>> Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps and stairs, and never climb ladders, ropes, or scaffolds.  He can frequently balance, occasionally stoop, and never crouch, kneel, or crawl.  He can occasionally push/pull with the lower extremities, and occasionally operate foot controls with the bilateral feet.  In addition, the claimant is limited to work allowing him to alternate sitting and standing positions at will, without going off-task, and allowing an extra 5-minute break per hour.

Tr. 17.  In reaching this determination, the ALJ evaluated the totality of the evidence in the record, including all of Plaintiff's symptoms and the degree to which they agree with the medical evidence. Id.  The ALJ concluded that while Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, his testimony regarding the intensity, persistence, and limiting effects of those symptoms was not consistent with the medical evidence and other evidence in the record. Id.

At step four, the ALJ found that Plaintiff is able to perform past relevant work as an accountant based on testimony of a vocational expert ("VE").  Tr. 21.  On that basis, the ALJ found that Plaintiff was not disabled within the meaning of the Act from January 15, 2014, the alleged onset date, through December 31, 2018, the date last insured.  Id.

### III.  ANALYSIS

Plaintiff asserts that the ALJ's ruling was erroneous in three ways.  First, he argues that the ALJ failed to adequately evaluate the treating opinion evidence.  Second, he maintains that the ALJ's credibility assessment was defective because she failed to consider Plaintiff's work history. Third, Plaintiff argues that the ALJ's decision violates his constitutional rights because the Commissioner at the time of Judge Addison's decision was protected by unconstitutional removal restrictions.

#### A.  The Evaluation of Treating Opinion Evidence

Plaintiff first asserts that the ALJ did not give proper weight to the opinions of his treating physicians, Dr. Lequerica and Dr. Demuro.  Pl. Br. at 10.  The Court disagrees.

The Social Security Regulations state that "[w]hen the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would

give it if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(ii).[3] However, "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 (3d Cir. 2011). The ALJ can reject a treating physician's assessment based on "contradictory medical evidence and not due to his or her own credibility judgements, speculation or lay opinion." Humphreys v. Barnhart, 127 F. App'x 73, 75 (3d Cir. 2005). An ALJ may afford less weight to opinions by treating physicians where the objective medical evidence is found to be inconsistent. See e.g., Hudson v. Comm'r of Soc. Sec., 93 F. App'x 428, 430-31 (3d Cir. 2004) (finding the ALJ did not err in affording limited weight to a treating physician in light of objective medical evidence, including an x-ray and an MRI, that did not support his conclusions); Allison v. Barnhart, 100 F. App'x 106, 109 (3d Cir. 2004) (upholding an ALJ's decision to afford less weight to treating physicians' opinions he found to be inconsistent "with their own clinical and objective findings"); Coleman v. Comm'r of Soc. Sec., 494 F. App'x 252, 254 (3d Cir. 2012) (upholding ALJ's decision not to credit a treating physician's opinion when it was "not adequately supported by objective medical examination findings," choosing instead to credit a non-treating physician's opinion).

Judge Addison specifically stated in her opinion that she afforded little weight to both Dr. Lequerica's and Dr. Demuro's opinions because they were "more restrictive than indicated by the objective and treating evidence." Tr. 20. She found that the objective evidence in the record demonstrated "cervical and lumbar spine impairments," but that they were able to be "managed with conservative treatment." Tr. 20. The ALJ explained further that Dr. Lequerica's and Dr. Demuro's own treating notes conflicted with their findings as well; both doctors' treatment notes

---

[3] The Social Security Association removed 20 C.F.R. § 404.1527(c)(2)(ii) for cases filed on or after March 27, 2017. Plaintiff filed this case in June of 2015, so this statute applies in the instant case.

reported "mild or normal findings and minimal complaints" that were not in line with the severity of their analyses of Plaintiff's functional abilities.  Tr. 20.

Plaintiff further argues that the ALJ's finding that the treating physicians' opinions were not consistent with their own treatment notes "is simply an impermissible substitution of the ALJ's lay interpretation for that of the treating sources."  Pl. Br. at 17.  The Court finds that this was not an impermissible substitution; the Judge indicated an inconsistency in the record which is within her purview.  See e.g., Allison, 100 F. App'x 106, 109 (3d Cir. 2004) (permitting an ALJ to afford less weight to treating physicians' opinions when they were "inconsistent with their own clinical and objective findings.") Accordingly, the Court finds that the ALJ appropriately afforded little weight to the treating opinions.[4]

### B. The Credibility Assessment

Plaintiff next argues that the ALJ's credibility assessment is defective because she did not consider Plaintiff's "stellar work history."  Pl. Br. at 22.  The Court finds this argument unavailing.

In Sanborn v. Comm'r of Soc. Sec., the Third Circuit upheld an ALJ decision that did not mention a plaintiff's "unblemished work history when assessing his credibility" because "the ALJ did explain why she found that [the plaintiff's] subjective reports . . . were belied by other evidence of record."  613 F. App'x 171, 176-77 (3d Cir. 2015).  Specifically, the ALJ in Sanborn explained that the plaintiff had received treatment for his issues that appeared to successfully control his

---

[4] Plaintiff further alleges that the ALJ erroneously failed to consider various factors of the treating physician's opinion that might afford it more weight.  For example, Plaintiff notes that the ALJ did not mention that Dr. Lequerica is a neurologist, although the Social Security Regulations afford more weight to specialists. 20 C.F.R. § 404.1527(c)(5); Pl.'s Br. at 15.  Plaintiff is also critical of the ALJ for failing to mention that Dr. Demuro's and Dr. Laquerica's opinions agree with each other and that Dr. Demuro has examined Plaintiff on multiple occasions.  Id.  Plaintiff also claims that Dr. Lequerica and Dr. Demuro were the only doctors to provide a functional assessment of Plaintiff.  Id. at 16.  However, Plaintiff fails to explain how any of these purported errors would change the outcome, as the ALJ thoroughly reviewed and considered both opinions and provided substantial reasoning for why she assigned them lesser weight compared to other evidence in the record.  See e.g., Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (finding that the harmless error rule applies to administrative appeals and thus ruling that a plaintiff arguing a social security case on appeal must explain why an error would affect the ALJ's five-step analysis.)

symptoms, did not require assistive devices to ambulate, and had engaged in numerous activities that contradicted his claims of "intense, persistent, and near-completely disabling back pain." Id. at 177. Thus, the court found that "the ALJ's credibility determination was based on a broad view of the record and would have been supported by substantial evidence regardless of whether the ALJ had explicitly considered [the plaintiff's] employment history." Id.; see also Popovich v. Berryhill, No. 16-3042, 2017 WL 2780746, at *11 (D.N.J. June 27, 2017) (citing Salazar v. Colvin, No. 12-6170, 2014 WL 6633217, at *7 (E.D. Pa. Nov. 24, 2014)) ("The fact alone that a claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony of the extent of her limitations.")

In the instant case, Judge Addison explained that she discredited Plaintiff's subjective reports of his disability because they were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 18. Specifically, she noted that Plaintiff did not report "extreme pain or symptoms during treating appointments" and that all objective medical evidence, including cervical and lumbar spine x-rays and a lumbar spine MRI, came back normal or showing only mild abnormalities. Tr. 18-21. For these reasons, the Court is satisfied that the ALJ's decision regarding credibility was based on a comprehensive analysis of the record and was supported by sufficient evidence despite not mentioning Plaintiff's work history.

### C. The Constitutional Issue

Plaintiff finally argues that Judge Addison's decision is constitutionally invalid because the Commissioner at the time the opinion was issued, Andrew Saul, was subject to unconstitutional statutory removal restrictions. The Court disagrees.

In Seila Law LLC v. CFPB, the Supreme Court found it unconstitutional as violative of the separation of powers doctrine for the sole head of an independent agency with significant executive

power to be "removable only for inefficiency, neglect, or malfeasance." 140 S. Ct. 2183, 2197 (2020). According to the Court, the head of an agency must remain accountable to the President, and thus must be removable at will. Id. Pursuant to 42 U.S.C. § 902(a)(3), the Commissioner of Social Security "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." The Office of Legal Council published a memo on July 8, 2021 stating that it believed that the ruling in Seila Law, amongst other cases, made the removal protections in 42 U.S.C. § 902(a)(3) unconstitutional. Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021). When Judge Addison decided the instant case, the Social Security Commissioner at the time, Andrew Saul, was protected by this unconstitutional statute. Plaintiff argues that, as a result, the ALJ's denial of his DIB application is unconstitutional.

In Collins v. Yellen, the Supreme Court clarified that an agency's actions are not voided because of unconstitutional removal restrictions; as long as the head of the agency is properly appointed, "the unlawfulness of [a] removal provision . . . does not strip [an official] of the power to undertake the other responsibilities of his office." 141 S. Ct. 1761, 1788-1789, 210 L. Ed. 2d 432 (2021). Andrew Saul was constitutionally appointed to the office, so this Court finds no reason to find the ALJ's decision here was unconstitutional.

Plaintiffs are still entitled to relief if they can prove that the unconstitutional removal provisions caused "compensable harm." Id. at 1789. Plaintiff asserts that his injuries are two-fold: (1) "he did not receive a constitutionally valid hearing and adjudication from the ALJ" and that (2) "he did not receive a constitutionally valid adjudication process and decision from the [Appeals Committee]". Pl. Rep. at 5. Plaintiff further cites Cirko on behalf of Cirko v. Comm'r of Soc. Sec. as proof that when an appointment clause is defective, the Plaintiff does not need to

show prejudice because harm is assumed. 948 F.3d 148, 154 (3d Cir. 2020). However, the ALJs in Cirko were unconstitutionally appointed. Id. In the case at hand, the head of the Social Security Administration was properly appointed; it was the removal clause that was deficient. Thus, Cirko's ruling does not apply in Plaintiff's case.

In order to prove compensable harm where the removal procedures are unconstitutional, the harm has to be directly connected to the deficient removal restrictions. Collins, 141 S. Ct. 1761, 1789, 210 L. Ed. 2d 432 (2021). For example, if the President had attempted to remove the Commissioner or had announced that he would remove him if only the statute restricting his ability to do so did not stand in the way, then the statutory provision could cause harm. Id. at 1789. However, because no such removal was attempted before the instant case was decided, the Court is satisfied that Plaintiff has no avenue for recovery. See e.g., Kwasnik v. Kijakazi, No. 3:21-CV-08573, 2022 WL 2358424, at *19-11 (D.N.J. June 30, 2022) (finding that harm was not presumed when a plaintiff was denied disability benefits while Andrew Saul was Commissioner and protected by unconstitutional removal restrictions.); Margaret S. v. Kijakazi, No. CV 21-13556 (SDW), 2022 WL 2753475, at *8 (D.N.J. July 14, 2022) (upholding an ALJ's denial of disability benefits under Andrew Saul where the plaintiff "offer[ed] no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of her application for disability benefits."); Mor v. Kijakazi, No. CV 21-1730 (JMV), 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) (finding that, in regard to an unconstitutional removal restriction, "there must be an adequate nexus between the unconstitutional provision and the action at issue.")

IV. **CONCLUSION**

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.

Date: September 19, 2022

          **<u>s/ Madeline Cox Arleo</u>**
          **Hon. Madeline Cox Arleo**
          **UNITED STATES DISTRICT JUDGE**